John C. Theiss, WSBA #24488
**TRUSS** FABER **PC**
121 Lakeside Avenue, Suite B, 111
Seattle, WA 98122
Telephone: (206) 752-8255
Facsimile: (833) 422-0237

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| KEY TRONIC CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ALIEN TECHNOLOGY, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 24-cv-00365-RLP<br><br>**KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC**<br><br>**Oral Argument: November 5, 2025** |

COMES NOW Plaintiff Key Tronic Corporation ("Key Tronic") and, pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56, hereby moves the Court for entry of summary judgment against Defendant Alien Technology, LLC ("Alien Technology") on Key Tronic's breach of contract claim. This Motion is supported by Key Tronic's Statement of Material Facts Not in Dispute ("SMF") and the Declaration of Tony Voorhees, filed herewith. A proposed order is provided.

## INTRODUCTION

This is a straightforward action for the price under the Uniform Commercial Code ("UCC"). Key Tronic is a manufacturer of electromechanical products, and

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 1

\TRUSSFABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

Alien Technology requested that Key Tronic manufacture certain products. In 2019, the parties executed a Manufacturing Agreement, Key Tronic's usual requirements for its customers. Among other things, the Agreement mitigated the risk to Key Tronic that it would pay vendors to acquire batches of component parts necessary to manufacture Alien Technology's products and then be left holding excess materials ("Aged Inventory") that would have no value to Key Tronic if not consumed by further purchase orders. Under the Manufacturing Agreement, Alien Technology promised to issue purchase orders for finished goods; Key Tronic promised to manufacture and invoice Alien Technology for the finished products; and Alien Technology promised to pay for Aged Inventory. From 2019 through approximately December 2023, the parties performed under the Agreement.

Around January 2024, Alien Technology stopped paying Key Tronic's invoices for products Key Tronic had manufactured and delivered. Alien Technology has also refused to pay Key Tronic for Aged Inventory. Alien Technology materially breached the Manufacturing Agreement by failing to pay for products Key Tronic manufactured and delivered, for Aged Inventory, and for interest and storage charges. These facts are not in dispute, and Key Tronic is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

Key Tronic incorporates its Statement of Material Facts Not in Dispute ("SMF"), filed herewith pursuant to L. Civ. R. 56, which sets forth the material undisputed facts relevant to this Motion.

On June 27, 2019, the parties executed a Manufacturing Agreement ("Agreement"). SMF ¶¶ 2–3. In the Agreement, Key Tronic is referred to as

KEY TRONIC CORPORATION'S MOTION
FOR SUMMARY JUDGMENT AGAINST
ALIEN TECHNOLOGY, LLC

2

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

"Supplier," and Alien Technology is referred to as "Buyer." SMF ¶ 4. The Agreement required Key Tronic to acquire component parts for the purpose of fulfilling Alien Technology's purchase orders, and Alien Technology agreed to be liable for excess inventory that was not consumed in follow-on purchase orders. SMF ¶¶ 5–7.

Section 1(a) of the Agreement states: "Supplier shall sell to Buyer and Buyer shall purchase from Supplier under the terms and conditions of this Agreement all of Buyer's requirements for the Products listed on Exhibit A." SMF ¶ 5. Under Section 2(a) of the Agreement, Alien Technology was required to submit "rolling forecasts" of its requirements to Key Tronic, which Key Tronic was expected to rely on to acquire "all parts and materials" necessary to manufacture the Products. SMF ¶ 6.

Section 2(a) of the Agreement further adds that Alien Technology is responsible for excess materials that remain in Key Tronic's inventory for more than sixty days:

> If any parts and materials purchased by Supplier pursuant to this paragraph 2, . . . remain in Supplier's inventory for a period in excess of sixty (60) days (Aged Inventory), . . . then Buyer shall, at Buyer's option: (1) immediately pay Supplier a cash deposit in the amount of the Aged Inventory at Supplier's cost plus seven and one-half percent (7.5) and if Supplier is to retain possession of the Aged Inventory, Buyer shall pay Supplier an inventory storage fee equal to two percent (2%) of Supplier's cost of Aged Inventory per month; or (2) immediately purchase all such Aged Inventory at Supplier's cost and Buyer shall pay Supplier's cost to either package and ship Aged Inventory to Buyer or scrap Aged Inventory; or (3) immediately provide Supplier with a Purchase order to consume Aged Inventory into Product in the next thirty (30) days.

SMF ¶ 8.

Section 6(b) of the Agreement provides that Alien Technology "shall pay all invoices for Products delivered within thirty (30) days of the date of invoice." SMF

KEY TRONIC CORPORATION'S MOTION
FOR SUMMARY JUDGMENT AGAINST
ALIEN TECHNOLOGY, LLC

3

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

¶ 8. Section 6(d) provides for interest on past-due invoices at 1% per month, and if Alien Technology "disputes any amount invoiced," Alien Technology "will notify [Key Tronic] in writing within fifteen (15) business days of such dispute together with an explanation of the basis for such dispute." SMF ¶ 9.

Section 22(e) of the Agreement states: "This Agreement and its formation, operation and performance and the terms of all sales of Product hereunder, shall be governed, construed, performed and enforced in accordance within the laws of the State of Washington without regard to its conflict of laws principles." SMF ¶ 10.

As contemplated by the Agreement, Alien Technology issued forecasts and firm releases, also known as purchase orders, in writing for Key Tronic to manufacture products. SMF ¶ 11. As contemplated by the Agreement, Key Tronic relied on those forecasts and purchase orders to acquire component parts and plan its production of products for Alien Technology's benefit. SMF ¶ 12. Key Tronic then manufactured and delivered the products requested by Alien Technology in the purchase orders, and Alien Technology accepted delivery of the products. SMF ¶¶ 13–14. Key Tronic then duly invoiced Alien Technology for the accepted products. SMF ¶ 15.

In total, Alien Technology owes Key Tronic a balance of $177,729.80 for products Key Tronic manufactured and delivered to Alien Technology and for which Key Tronic duly invoiced Alien Technology. SMF ¶ 16.

Next, Key Tronic is holding $630,044.15 in excess parts and materials, otherwise known as Aged Inventory, that was purchased for Alien Technology's benefit per Section 2(a) of the Agreement. SMF ¶ 17. Key Tronic was able to sell $152,518.28 worth of Aged Inventory at a discounted price of $63,787.30, leaving

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 4

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

Key Tronic with a loss of $95,385.80. SMF ¶ 18. Key Tronic has a balance of $343,912.33 in Inventory Reserves, which is a credit against Alien Technology's total inventory liabilities. SMF ¶ 19. Accounting for this credit and the loss on Aged Inventory that Key Tronic sold at a discount, Alien Technology owes a balance of $381,517.62 for Aged Inventory that cannot be cancelled, returned, or resold at a reasonable price. SMF ¶ 19.

As of the date of this filing, Alien Technology owes $558,364.61 in Aged Inventory storage fees per Section 2(a) of the Agreement. SMF ¶ 20. This Aged Inventory is taking up valuable space that Key Tronic would otherwise use to stage other projects. SMF ¶ 20. Key Tronic had to maintain a security system for the warehouse; Key Tronic had to pay insurance for the warehouse if equipment was in it; and Key Tronic incurred staff expenses relating to the inventory in the warehouse. SMF ¶ 20.

Finally, Alien Technology owes Key Tronic $79,878.13 in interest on past-due invoices, which is calculated at 1% per month from the date each invoice was due per Section 6(d) of the Agreement. SMF ¶ 21.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure allows a party to move for summary judgment by identifying each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). Summary judgment must be granted if the moving party proves "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v.*

KEY TRONIC CORPORATION'S MOTION
FOR SUMMARY JUDGMENT AGAINST
ALIEN TECHNOLOGY, LLC — 5

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. A fact is "material" if it might affect the suit's outcome under the governing law. *Id*. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id*.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

## ARGUMENT

**A.   Key Tronic is Entitled to Judgment as a Matter of Law that Alien Technology Breached the Agreement.**

Alien Technology breached the Agreement by failing to pay for products Key Tronic manufactured and delivered to Alien Technology and by failing to pay Key Tronic for Aged Inventory. The parties' Agreement provides that Washington law governs the Agreement and the parties' performance thereunder. SMF ¶ 10; Ex. A,

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 6

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

at 10–11. As the Agreement involves the sale of goods, Washington's Uniform Commercial Code ("UCC") applies. *See* Revised Code of Washington (RCW) § 62A.2-101 *et seq.*; RCW § 62A.2-102(1) (providing that "this Article applies to transactions in goods").

To prove a breach of contract, a plaintiff must establish: (1) the existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach. *Millies v. LandAmerica Transnation,* 185 Wash. 2d 302, 308, 372 P.3d 111, 115 (2016); *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wash. App. 455, 467, 404 P.3d 559, 566 (2017).

Here, Alien Technology admits that on or about June 27, 2019, Key Tronic and Alien Technology executed the Manufacturing Agreement. ECF No. 9 ¶ 7. The Agreement is express, fully executed by both parties, and is therefore a valid and enforceable contract between Key Tronic and Alien Technology. *See* Ex. A; RCW § 62A.2-204(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement . . .").

### 1. *Alien Technology breached the Agreement by failing to pay for products Key Tronic manufactured and delivered to Alien Technology.*

Alien Technology breached the Agreement by issuing purchase orders to Key Tronic and requesting Key Tronic manufacture and deliver products, accepting delivery of the products, and then failing to pay for the products Key Tronic manufactured and delivered.

According to RCW § 62A.2-607(1), "[t]he buyer must pay at the contract rate for any goods accepted." Under Section 6(b) of the Agreement, Alien Technology was obligated to pay for products that Key Tronic manufactured and delivered to

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 7

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

Alien Technology "within thirty (30) days of the date of invoice." *See* SMF ¶ 8; Ex. A, at 4 ("Buyer shall pay all invoices for Products delivered within thirty (30) days of the date of invoice.").

Alien Technology issued purchase orders to Key Tronic as requests to manufacture products. SMF ¶ 11; Voorhees Decl. ¶ 4. Alien Technology "states the Purchase Orders speak for themselves." ECF No. 9 ¶ 16. Key Tronic manufactured those products as requested by Alien Technology. SMF ¶ 13; Voorhees Decl. ¶ 6. Key Tronic then delivered those products, and Alien Technology accepted delivery. SMF ¶¶ 13–14; Voorhees Decl. ¶¶ 6–7; *see* RCW § 62A.2-606(1) ("Acceptance of goods occurs when the buyer . . . (b) fails to make an effective rejection . . . or (c) does any act inconsistent with the seller's ownership . . . ."). Finally, Key Tronic duly invoiced Alien Technology for the delivered products. SMF ¶ 15; Voorhees Decl. ¶ 8. Pursuant to the terms of the parties' Agreement, payment was due within 30 days. SMF ¶ 8; Ex. A, at 4.

Alien Technology breached the agreement by failing to pay Key Tronic's invoices within 30 days. *See* RCW § 62A.2-301 ("The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract."). Accordingly, Key Tronic is entitled to judgment as a matter of law that Alien Technology breached the Agreement by failing to pay Key Tronic for products manufactured and delivered.

In *Northstar Sourcing, LLC v. Rocket Dog Brands*, LLC, No. C16-0405RAJ, 2017 U.S. Dist. LEXIS 81334, at *7 (W.D. Wash. May 26, 2017), Northstar was contracted to manufacture shoes for Rocket Dog. Northstar moved for summary judgment on its breach of contract claim, contending "that it fulfilled purchase

KEY TRONIC CORPORATION'S MOTION
FOR SUMMARY JUDGMENT AGAINST
ALIEN TECHNOLOGY, LLC

8

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

orders from Rocket Dog by manufacturing and delivering shoes for which Rocket Dog now owes Northstar $2,094,326.00 in principal and another $374,241.66 in interest." *Id.* at *7. Rocket Dog countered, among other things, that its records did not match Northstar's, as "Northstar's records do not account for $23,036.00 in cancelled invoices." *Id.* at *13. Rocket Dog "submitted cancelled purchase orders . . . all dated one week after the orders were shipped." *Id.* at *13. The court reasoned that, "[u]nder the Washington UCC, unless the goods are nonconforming—which Rocket Dog does not allege here—tender 'entitles the seller to acceptance of the goods and to payment according to the contract.' RCW 62A.2-507(1). Accordingly, Rocket Dog's evidence merely shows that it cancelled the purchase orders after they were delivered." *Id.* at *13. "Even granting Rocket Dog all inferences in the most favorable light, its evidence does not demonstrate a material issue of fact regarding these orders." *Id.* at *13. The court granted summary judgment for Northstar and against Rocket Dog on the principal balance of outstanding invoices. *Id.* at *13.

Here, Key Tronic has produced evidence that it "fulfilled purchase orders from [Alien Technology] by manufacturing and delivering" the products. SMF ¶¶ 13–16; Voorhees Decl. ¶¶ 6–9. There is no genuine issue of material fact with respect to Key Tronic's claims for recovery of the sums due on unpaid invoices for products Key Tronic manufactured and delivered, and Key Tronic is entitled to judgment as a matter of law that Alien Technology breached its duty to pay for manufactured and delivered products.

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 9

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

### *2. Alien Technology breached the Agreement by failing to pay for Aged Inventory.*

Alien Technology breached the Agreement by failing to pay for "excess material," otherwise known as Aged Inventory, which are excess component parts that Key Tronic acquired for Alien Technology's benefit and which became aged and have no other use or value to Key Tronic. The parties' Agreement deals with the issue of Aged Inventory on the very first page. SMF ¶¶ 8–11; Ex. A, at 1. As the title of Section 2 of the Agreement shows—*"Orders, Forecasts and Aged Inventory"*—the purpose of Section 2 of the Agreement was to ensure that Key Tronic would not be liable for excess parts and materials that were not consumed in follow-on purchase orders. Ex. A, at 1–2.

Pursuant to Washington's UCC, "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." RCW § 62A.2-301. Further, "[w]hen the buyer fails to pay the price as it becomes due, the seller may recover, together with any incidental damages under [RCW § 62A.2-710], the price . . . [o]f goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing." RCW § 62A.2-709(1)(b).

As the plain language of the Agreement states, Alien Technology issued forecasts and purchase orders to Key Tronic, which authorized Key Tronic to acquire inventory for which Alien Technology would ultimately bear responsibility. SMF ¶¶ 6–7. Section 2 of the Agreement authorized Key Tronic to acquire inventory: "Buyer authorizes, directs and expects Supplier to rely on the forecasts to order, purchase

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 10

TRUSSFABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

and otherwise make available . . . , all parts and materials for incorporation into forecasted Products . . . ." SMF ¶ 6; Ex. A, at 1. Section 2(a) further provides that Alien Technology bears responsibility for those materials. Section 2(a) states:

> If any parts and materials purchased by Supplier pursuant to this paragraph 2 . . . remain in Supplier's inventory for a period in excess of sixty (60) days (Aged Inventory), and if the Buyer does not take delivery in accordance with the rolling forecasts, then Buyer shall, at Buyer's option: (1) immediately pay Supplier a cash deposit in the amount of the Aged Inventory at Supplier's cost plus seven and one-half percent (7.5) and if Supplier is to retain possession of the Aged Inventory, Buyer shall pay Supplier an inventory storage fee equal to two percent (2%) of Supplier's cost of Aged Inventory per month; or (2) immediately purchase all such Aged Inventory at Supplier's cost and Buyer shall pay Supplier's cost to either package and ship Aged Inventory to Buyer or scrap Aged Inventory; or (3) immediately provide Supplier with a Purchase order to consume Aged Inventory into Product in the next thirty (30) days.

SMF ¶ 7; Ex. A, at 1. Accordingly, there is no question that Alien Technology agreed to assume liability for aged inventory.

In *Groupwell Int'l (HK) Ltd. v. Gourmet Express, LLC*, No. 4:09-CV-00094-M, 2014 U.S. Dist. LEXIS 79807, at *2 (W.D. Ky. June 11, 2014), plaintiff Groupwell was a seller of frozen seafood and vegetables, and Gourmet Express was a manufacturer of frozen dinners. *Id*. The court granted summary judgment to Groupwell for nearly $3 million in goods delivered to Gourmet, but Groupwell also sought summary judgment on its claim for inventory acquired due to cancelled orders. According to Groupwell, "Gourmet agreed to purchase goods in the future from Groupwell pursuant to a shipping schedule" but stated at one point that "it did not intend to purchase additional goods from Groupwell, despite the fact that goods had already been ordered." *Id*. at *45–46. Groupwell was able to cancel all but three orders it made to its suppliers for shrimp totaling $280,320. In regard to those three

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 11

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

orders, Groupwell relied on RCW § 62A.2-709(1)(b), which provides: "When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages . . . , the price . . . of *goods identified to the contract* if the seller is unable after reasonable effort to resell them at a reasonable price. . . ." *Groupwell Int'l (HK) Ltd.*, 2014 U.S. Dist. LEXIS 79807, at *48 (emphasis added).

The court found that "the undisputed evidence shows that [Gourmet's representative] provided Groupwell with a schedule of goods that Gourmet needed" and which contained the "schedule of deliveries with commitments from Gourmet to procure" such that "the seafood could be ordered [a] long time in advance to get . . . the right product at the right time at the right place." *Id.* at *52. The court found "that there is no genuine issue of material fact regarding proof of Groupwell's damages. Summary judgment is proper in Groupwell's favor as to Gourmet's cancelled orders." *Id.* at *55.

Similarly, as here, "the undisputed evidence shows" that Alien Technology issued purchase orders to Key Tronic, SMF ¶ 11; Voorhees Decl. ¶ 4; ECF No. 9 ¶ 16; which obligated Key Tronic to acquire parts and materials necessary to manufacture Alien Technology's products, SMF ¶ 6, and Alien Technology agreed to be liable for the excess if not consumed in follow-on purchase orders, SMF ¶ 7. The aged inventory is unable to be canceled, returned, or resold at a reasonable price. SMF ¶ 19; Voorhees Decl. ¶ 12. Accordingly, Alien Technology's failure to pay for the Aged Inventory is a material breach of the Agreement, and Key Tronic is entitled to judgment as a matter of law.

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 12

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

**B. Key Tronic is Entitled to Recover Damages for the Price of Products Manufactured and Delivered, the Cost of Aged Inventory, Incidental Damages, and Interest.**

Under Washington's UCC, "When the buyer fails to pay the price as it becomes due, the seller may recover, together with any incidental damages under [RCW § 62A.2-710], the price (a) Of goods accepted . . . ; and (b) Of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing." RCW § 62A.2-709(1)(a)–(b). RCW § 62A.2-709(1)(a) covers the price of products manufactured and delivered, while § 62A.2-709(1)(b) covers excess materials/Aged Inventory.

Next, "[i]ncidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." RCW § 62A.2-710. Key Tronic's incidental damages include storage fees. *See, e.g.*, *Commonwealth Edison Co. v. Allied Chem. Nuclear Prods., Inc.*, 684 F. Supp. 1429, 1431–34 (N.D. Ill. 1988) (denying buyer summary judgment because the aggrieved seller was entitled to damages including recovery of the price pursuant to UCC § 2-709 and storage costs as incidental damages under UCC § 2-710).

Finally, when a breach consists of a failure to pay a definite sum in money, interest is recoverable from the time for performance on the amount due. "Prejudgment interest may be awarded on liquidated claims or readily determinable claims." *King Aircraft Sales, Inc. v. Lane*, 68 Wn. App. 706, 720, 846 P.2d 550, 558 (1993). "A claim is liquidated if it may be readily determined by a fixed standard

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC

13

\TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

without the exercise of discretion or reliance on expert opinion." *Id*. "The fact that a claim is disputed does not render the claim unliquidated, so long as it may be determined by reference to an objective source." *Id*. "This rule governs claims for prejudgment interest under the UCC as well." *Id*. "Prejudgment interest is favored in the law because it promotes justice." David K. DeWolf & Keller W. Allen, 16 Wash. Practice Series, *Prejudgment Interest* § 6:13 (4th ed. 2016). "In Washington, the rate of prejudgment interest is 12% in the absence of a written agreement specifying a different rate." *Northstar Sourcing, LLC v. Rocket Dog Brands, LLC*, No. C16-0405RAJ, 2017 U.S. Dist. LEXIS 81334, at *14 (W.D. Wash. May 26, 2017) (citing RCW § 4.56.110; RCW § 19.52.020).

### 1. *Key Tronic's damages for manufactured and delivered products are $177,729.80.*

Key Tronic is entitled to recover the contract price for products manufactured and delivered, or "the price . . . [o]f goods accepted." *See* RCW § 62A.2-709(1)(a). Key Tronic's damages that flow from Alien Technology's failure to pay for goods accepted is $177,729.80. SMF ¶¶ 13–16; Voorhees Decl. ¶¶ 6–9.

### 2. *Key Tronic's damages for aged inventory are $381,517.62.*

Key Tronic is entitled to recover the price of Aged Inventory, or "the price . . . [o]f goods identified to the contract." *See* RCW § 62A.2-709(1)(b). Key Tronic's damages that flow from Alien Technology's breach of its duty to pay for aged inventory pursuant to Section 2(a) of the Agreement include the cost of aged inventory in the amount of $630,044.15, less the inventory reserves balance of $343,912.33, plus the loss on Aged Inventory that Key Tronic sold as a mitigation effort in the amount of $95,385.80. SMF ¶¶ 17–19; Voorhees Decl. ¶¶ 10–12.

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC — 14

TRUSSFABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

Together, Key Tronic's damages that flow from Alien Technology's breach of Section 2(a) of the Agreement relating to Aged Inventory is $381,517.62. SMF ¶¶ 17–19; Voorhees Decl. ¶¶ 10–12.

### 3. Key Tronic's incidental damages are $558,364.611.

Key Tronic is also entitled to incidental damages under RCW § 62A.2-710, which includes storage fees on aged inventory in the amount of $558,364.61. SMF ¶ 20; Voorhees Decl. ¶ 13; *see* RCW § 62A.2-710 ("Incidental damages to an aggrieved seller include any commercially reasonable charges . . . otherwise resulting from the breach."). In total, as of the filing of this motion, Key Tronic's incidental damages flowing from Alien Technology's breach of Section 2(a) of the Agreement are $558,364.61. SMF ¶ 20; Voorhees Decl. ¶ 13.

### 4. Key Tronic is entitled to prejudgment interest at 12%.

Key Tronic is entitled to interest on past-due invoices at the rate of 12% per year (or 1% per month) as agreed to in the parties' Agreement.

In *Northstar Sourcing, LLC v. Rocket Dog Brands, LLC*, No. C16-0405RAJ, 2017 U.S. Dist. LEXIS 81334, at *14-15 (W.D. Wash. May 26, 2017), "Northstar [] produced ample evidence that Rocket Dog agreed to pay interest at a rate of one percent per month on the outstanding balance, evidence Rocket Dog has not contested." *Id*. at *14 (record citations omitted). "This reflects an annual interest rate of 12% and a daily rate of .03288%, resulting in a total interest sum of $374,241.66 on Northstar's original damages claim." *Id*. at *14 (record citations omitted). "Finding that there is no genuine issue of material fact as to Northstar's damages claim or the agreed upon interest rate, the Court award[ed] Northstar

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC

15

TRUSSFABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

interest in the amount of $348,487.22 on its principal damages of $1,950,199.00." *Id.* at *14–15.

Here, Section 6(d) of the parties' Agreement specifies that interest on unpaid invoices shall accrue at 1% per month (or 12% per year). SMF ¶ 9; Ex. A, at 4. The total amount of interest owed on Alien Technology's past-due invoices is $79,878.13. SMF ¶ 21; Voorhees Decl. ¶ 14.

A summary of Key Tronic's damages is below:

| | |
|---|---|
| Accepted products. RCW § 62A.2-709(1)(a) | $177,729.80 |
| Aged inventory. RCW § 62A.2-709(1)(b) | $381,517.62 |
| Incidental damages. RCW § 62A.2-710 | $558,364.61 |
| Interest. RCW § 360.010(1) | $79,878.13 |
| Total | $1,197,490.16 |

## CONCLUSION

This case is a straightforward action for the price under the UCC, the material facts are not in dispute, and Key Tronic is entitled to judgment as a matter of law. Key Tronic respectfully requests this Court grant Plaintiff's Motion for Summary Judgment and enter judgment against Defendant Alien Technology in the amount of $1,197,490.16, with interest to accrue post-judgment at the rate of 12% per year.

Dated: August 28, 2025

KEY TRONIC CORPORATION'S MOTION
FOR SUMMARY JUDGMENT AGAINST
ALIEN TECHNOLOGY, LLC

16

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

1
2  **TRUSS** FABER PC
3
4  By /s/John C. Theiss
   John C. Theiss, WSBA No. 24488
5  Steven P. Vaughn, admitted *pro hac vice*
   121 Lakeside Ave., Ste. B, 111
6  Seattle, WA 98122
   Phone: (206) 752-8255
7  Facsimile: (833) 422-0237
   john@trussfaber.com
8  steven@trussfaber.com
   ***Attorneys for Plaintiff Key Tronic***
9  ***Corporation***
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KEY TRONIC CORPORATION'S MOTION
FOR SUMMARY JUDGMENT AGAINST
ALIEN TECHNOLOGY, LLC

17

\TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

    Teruyuki S. Olsen, WSBA #40855
    Oseran Hahn P.S.
    11225 SE 6th Street, Suite #100
    Bellevue, Washington 98004
    T: (425) 455-3900
    F: (425) 455-9201
    tolsen@ohswlaw.com

Dated: August 28, 2025.

        **TRUSS** FABER PC

        By /s/*John C. Theiss*
        John C. Theiss, WSBA No. 24488
        Steven P. Vaughn, admitted *pro hac vice*
        121 Lakeside Avenue, Ste. B, 111
        Seattle, WA 98122
        Phone: (206) 752-8255
        Facsimile: (833) 422-0237
        john@trussfaber.com
        steven@trussfaber.com
        ***Attorneys for Plaintiff Key Tronic Corporation***

KEY TRONIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIEN TECHNOLOGY, LLC

18

TRUSS FABER
121 Lakeside Ave., Ste. B, 111
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237